Mr. Justice Kelley
dissenting:
I do not quarrel with my brethern as to the power of the court to overrule the doctrine of sovereign immunity — only their wisdom.
Regardless of whether the courts erred in adopting the doctrine, it has been the law of this state since its beginning. Liber v. Flor, 143 Colo. 205, 353 P.2d 590, and cases cited therein. This does not necessarily mean that it is a fair and just doctrine.
The General Assembly has enacted a substantial amount of legislation based upon the assumption that sovereign and governmental immunity were firmly established as a fundamental concept in this state.
The General Assembly until 1965 recognized its unfairness on many occasions by granting permission to *108 private individuals to sue the state for the negligence of its employees.
In 1965 the General Assembly created the Claims Commission. 1965 Perm. Supp., C.R.S. 1963, 130-10-1, et seq., Sec. 1 declared:
“This article shall not be construed as a waiver or repudiation of the doctrine of sovereign immunity, firmly established in the law of this jurisdiction, by the state of Colorado, or any state agency, or any of its political subdivisions, but is enacted to establish an orderly and expeditious procedure to aid the general assembly in the consideration and evaluation of tort claims against the state, some of which the state should in equity and good conscience assume and pay. No liability for any claim shall be imposed upon the state or any state agency by a determination of the Colorado claims commission under the provisions of this article unless the general assembly shall have enacted legislation making a specific appropriation for the payment of such claim.” (Emphasis added.)
Sec. 4 defined the jurisdiction of the commission extending it to claims for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of a state agency, or of a state employee while acting within the scope of his office or employment, with certain exceptions.
The act provided for the procedure for presenting claims, for hearings, and for the findings of fact and the report and recommendations to the General Assembly. A period within which such claims had to be filed or be forever barred was provided for.
In 1967 the legislature amended sections 4, 7, and 8. 1967 Perm. Supp., C.R.S. 1963, 130-10-4, 7, and 8.
In 1962 the General Assembly passed legislation which authorized the state, including any agency or department thereof, a county, or a city and county, to purchase insurance for the purpose of insuring its officers, employees, and agents against any liability for injuries or *109 damages resulting from their negligence or other tortious conduct during the course of their service or employment. C.R.S. 1963, 72-16-1, et seq.
■ Sec. 5 of this act provides:
“Nothing contained in this article shall be deemed to be a waiver of the immunity of the state or its governmental subdivisions, nor shall failure to procure such insurance be considered as creating any liability against the state or its governmental subdivisions.” (Emphasis added.)
Further reference to other acts which have been adopted on the assumption that sovereign immunity is an established principle of the law of this state need not be cited. It is clear that the whole scheme of government has for its basic premise the concept that the state is not liable for the torts of its officers, agents and employees. However, see C.R.S. 1963, chapter 3, art. 2, particularly sec. 5.
According to the opinion of the court,
“The effect of this opinion and its two contemporaries is simply to undo what this court has done and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so.”
As I interpret that language, all of the laws now on the books, which are based on the assumption that the doctrine of sovereign immunity prevails in this state, are no longer effective — a sort of judicial repeal. I do not wish to participate in creating this confusion.
What the court has done today is not to create “judge made” law; it is judicial legislation which will undoubtedly create consternation, if not more. Perhaps as a starting point for the rebuilding job which now confronts the legislature, it may wish to consider the necessity of re-enacting C.R.S. 1963, 63-2-4.